# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV–16–592

| | | |
|---|---|---|
| JACK JOHNSTON | | **Opinion Delivered:** February 1, 2017 |
| | **APPELLANT** | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66PR–2016–147] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | | |
| | | HONORABLE ANNIE POWELL HENDRICKS, JUDGE |
| | **APPELLEE** | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

The Sebastian County Circuit Court entered an order for long-term protective custody of appellant Jack Johnston, which he now appeals. Johnston argues that (1) the Arkansas Department of Human Services (the Department) failed to present evidence that his family was notified as required by Arkansas Code Annotated section 9-20-111, and (2) that the circuit court erred in limiting counsel's cross-examination regarding Johnston's assets and finances. We affirm.

I.     *Adult Maltreatment Custody Act*[1]

A "maltreated adult" means an adult who has been abused, exploited, neglected, physically abused, or sexually abused. Ark. Code Ann. § 9-20-103(15). "Neglect" includes self-neglect or an act or omission by a caregiver responsible for the care and supervision of

---

[1]Codified at Ark. Code Ann. §§ 9-20-101 et seq. (Repl. 2009).

an endangered or an impaired adult constituting negligent failure to provide necessary treatment, rehabilitation, care, food, clothing, shelter, supervision, or medical services to an endangered or an impaired adult, or to carry out a prescribed treatment plan. *See* Ark. Code Ann. § 9–20–103(17)(A) & (B)(i), (iii).

The Arkansas Department of Human Services or a law enforcement official may take a maltreated adult into emergency custody if the circumstances or condition of the maltreated adult are such that returning to or continuing at the maltreated adult's place of residence or in the care of a person responsible for the maltreated adult's care presents imminent danger to the maltreated adult's health or safety, and the maltreated adult either lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents imminent danger to his or her health or safety, or has a mental impairment or a physical impairment that prevents the maltreated adult from protecting himself or herself from imminent danger to his or her health or safety. Ark. Code Ann. § 9–20–114(a)(1), (2).

Pursuant to Arkansas Code Annotated section 9–20–117(c), the trial court may order long-term custody with the Department if the court determines that

(1) The adult has a mental or physical impairment or lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his or her health or safety;

(2) The adult is unable to provide for his or her own protection from maltreatment; and

(3) The court finds clear and convincing evidence that the adult to be placed is in need of placement as provided in this chapter.

II.

(4)

II. *Procedural History*

On March 17, 2016, the Department filed a petition for emergency custody of Johnston pursuant to the Adult Maltreatment Custody Act. In its petition, the Department alleged that Johnston's health and safety were in danger. Louise Spaunhurst, a nurse with Adult Protective Services (APS), stated in the attached affidavit that APS had received a hotline call on March 9, 2016, concerning Johnston's self-neglect. Johnston had refused to allow anyone to treat his wounds, he denied having any wounds, and he stated that he only had "war injuries." Examination at Sparks Hospital revealed that he had multiple, severe open-pressure ulcers. His wounds required debridement and a colostomy aid. Johnston also had stage-three pressure ulcers to his right and left heels, a pressure ulcer on his left calf, and stage-three pressure ulcers to his left buttock and sacrum/coccyx area, and the area was surrounded by cellulitis. Johnston was diagnosed with dementia, a history of alcoholism, multiple decubitus ulcers, and a history of prostate cancer. Johnston lived with his son at the time the petition was filed. Nurse Spaunhurst stated that Johnston was impaired and lacked the mental capacity to comprehend the nature of the consequences of returning to his son's home. She concluded that Johnston could not meet his daily nutritional, medication-related, financial, and medical needs and that Johnston required 24-hour care and supervision. Spaunhurst recommended that Johnston remain in the custody of APS. In the affidavit attached to the petition, Dr. Ahmad Koake stated that Johnston was both mentally and physically impaired, and he recommended that Johnston be placed in a skilled-nursing facility.

The circuit court entered an ex parte order for emergency custody and directed that Johnston be placed in the least restrictive environment necessary to meet his needs. Johnston was appointed counsel, and a probable-cause hearing was set for March 18, 2016.

The circuit court entered a probable-cause order the same day as the hearing. In its order, the circuit court found that no suitable primary caregiver was known to the Department, and it set a long-term custody hearing for April 14, 2016. The circuit court ordered notice to be given to Johnston's counsel, his next of kin whose names and addresses were known to the court, the person having physical custody of Johnston, and any other required entities.

### III. *Custody Hearing*

Spaunhurst testified at the long-term custody hearing that she had received the call to the hotline regarding Johnston. She stated that the caller informed her that Johnston was bedbound, that he would not allow anyone to treat his wounds, and that he was living with his son. Spaunhurst testified that she had examined Johnston at Sparks Hospital the next day, and she found him to be "self-oriented" only, confused, and unaware that he was in the hospital or why he was there. She testified that she had observed multiple wounds to his heels, legs, buttocks, coccyx, and sacrum. Spaunhurst testified that Johnston was moved to Select Specialty Hospital where he received antibiotics and wound care. Spaunhurst also testified that neither of Johnston's children was willing or able to provide the level of care he required. Spaunhurst explained that Johnston's son had told her that his father had "nothing at his house" except for a chair with a bad spring and that the son believed the chair was the cause of the bedsores. Spaunhurst stated that, in her investigation of Johnston's

case, she spoke to his family, his physician, the nursing staff, the police, and Johnston himself. Based on her investigation, Spaunhurst believed that a long-term-care facility was the least restrictive environment possible to meet Johnston's needs.

Spaunhurst also testified that Johnston received $1,521.64 from Social Security and that he had a bank account with a balance of $1,527.29. When counsel for Johnston asked Spaunhurst if she had made any other efforts to find assets in addition to the social security check and the bank account, the Department objected, stating that the questioning was beyond the scope of representation of an impaired or endangered individual. The circuit court sustained the objection and stated that counsel's "obligation here is limited to 'the issue of deprivation of liberty, but not with respect to issues involving property, money, investments or other fiscal issues.'" Counsel responded that she had a right to cross-examine Spaunhurst on the matter of financial information because it had been brought before the court. The circuit court allowed counsel to ask Spaunhurst the question about any other assets that might exist in addition to the SSI and the bank account, and Spaunhurst replied, "I have no knowledge of any other assets that he has."

The Department requested that Johnston remain in a skilled-nursing facility and that the circuit court find that Johnston was endangered and impaired, that he lacked the capacity to comprehend the nature and consequence of remaining in a situation that presents an imminent danger to himself and his safety, and that there was no adequate caregiver who was willing to provide the required level of care, and that the court authorize the Department to close Johnston's bank account and transfer the balance to the long-term-care facility in which he would reside.

Counsel for Johnston refused to sign the precedent, and explained that it was "because of the language in paragraph six, which discusses assets and future assets."

On April 14, 2016, the circuit court entered the order for long-term protective custody. The circuit court found that Johnston was endangered or impaired and lacked the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his health or safety. The circuit court specifically found that Johnston had been diagnosed with sacral decubitis ulcers associated with cellulitis, bilateral heel wounds and bilateral lower-extremity wounds, with a secondary diagnosis of alcoholism, malnutrition and encephalopathy, dementia, and prostate cancer. The circuit court found that Johnston was unable to care for himself or to protect himself and that Dr. Ur Rehman recommended 24–hour-a-day care for feeding, bathing, and for the administration of medication and that the least restrictive environment to achieve this care was a skilled-nursing facility. The circuit court found that there was no known caregiver willing to provide the level of care Johnston required, and it found by clear and convincing evidence that Johnston required such placement. The circuit court ordered that the Department have long-term custody of Johnston.

IV. *Standard of Review*

Our standard of review for probate orders is well established. This court reviews probate proceedings de novo, and the decision of the probate court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the probate court to determine the credibility of witnesses. *Adams v. Ark. Dep't of Health & Human Servs.*, 375 Ark. 402, 409, 291 S.W.3d 172, 177 (2009).

6

V. *Discussion*

A. Failure to Notify Family

Johnston argues that the circuit court erred in finding that he was an adult in need of placement because the Department presented no evidence that his family members had received the notice required by Arkansas Code Annotated section 9-20-111(d)(2), which provides that notice of the long-term-custody hearing shall be given to the next of kin of the respondent whose names and addresses are known to the petitioner. Johnston reasons that the Department's failure to give notice to family members resulted in a lack of proof that there was no willing or able caregiver available to provide Johnston with the level of care he required.

Although Johnston argues that Spaunhurst's testimony that neither of Johnston's children was willing or able to provide for his care is "clearly hearsay" and that "little to no foundation was laid for the testimony, neither a hearsay nor a foundational objection was made below thus, these issues are not preserved for review on appeal. *Doran v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 505, 442 S.W.3d 868.

Johnston asserts the alternative argument that there was no evidence presented concerning his children's ability to collect entitlements or income that may have been available to Johnston. Johnston failed to raise this argument below; thus, we do not address it. *Doran*, *supra*. Although we agree that notice was not given, the nature of the argument is procedural and not one of sufficiency; therefore, we do not address the merits.

## B. Limiting Cross-Examination

Johnston also argues that it was a violation of his due-process rights and reversible error for the circuit court to limit his ability to cross-examine Spaunhurst as to his assets or available benefits. Johnston points to Arkansas Code Annotated section 9-20-108(f)(1), which provides that

> [i]f a maltreated adult is found to be indigent or the court appoints the Arkansas Public Defender Commission as counsel for the maltreated adult, the commission shall represent the maltreated adult as to the issue of deprivation of liberty, but not with respect to issues involving property, money, investments, or other fiscal issues.

Johnston argues that his liberty interest directly relates to his financial assets, and thus, questioning should have been allowed on the matter. At the hearing, the circuit court first sustained the objection to further cross-examination concerning any other financial assets Johnston might have aside from his social security and the bank account; however, the circuit court subsequently allowed the question, stating from the bench, "We'll let her answer that and then we'll go from there. But I don't think we'll go on any more about property." Nurse Spaunhurst responded, "I have no knowledge of any other assets that he has." Based on this testimony, we do not see how Johnston can demonstrate prejudice.

## IV. *Conclusion*

The circuit court made the requisite findings. We cannot say that the circuit court clearly erred in entering an order placing Johnston in the long-term protective custody of the Department.

Affirmed.

HIXSON, J., agrees.

VAUGHT, J., concurs.

*Dusti Standridge*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.